OPINION
{¶ 1} Lanny Dale Muhleka is appealing the judgment of the Montgomery County Court of Common Pleas convicting him of gross sexual imposition and sentencing him accordingly.
 {¶ 2} On April 19, 2002, Muhleka was indicted on one count of rape by force of a victim under the age of thirteen, in violation of R.C. 2907.02(A)(1), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). Muhleka pled not guilty to both charges.
 {¶ 3} Muhleka filed a motion to suppress his oral and written statements on May 8, 2002. Following a hearing, the trial court overruled Muhleka's motion.
 {¶ 4} A jury trial was held on December 18-20, 2002, during which the following evidence was produced. On March 14, 2002, the victim in this case, Muhleka's eight year old step-daughter, handed her teacher, Jody Magato, a note during a standardized test. The note stated, "Dear Ms. Magato, my dad tries to have sex with me, but don't tell everyone, not even Mr. Baker. I will tell you the rest at recess. Love, [the victim.]"
 {¶ 5} Magato spoke briefly with the victim and disclosed the information to Mr. Baker, the school principal. Montgomery County Children's Services Bureau ("CSB") and the police were contacted. Carol Griesdorn from CSB and Detective James Kelly from the Montgomery County Sheriff's Office reported to the school's nurse's office to speak with the victim. Following the interview, the victim was transported to Children's Medical Center ("CMC") for an examination by Dr. Pinchas Ovide. Dr. Ovide took a complete history of the victim and spoke with the victim, Griesdorn, and the victim's mother, Trula Muhleka. The victim alleged that Muhleka had touched her under her clothes in her vaginal area. She stated the Muhleka had rubbed her private area and he made her touch and squeeze his penis until "white stuff came out." Dr. Ovide's examination revealed no physical evidence of sexual abuse, however based upon all of the information he received, he opined that the victim had been sexually abused.
 {¶ 6} Upon arriving at CMC, Muhleka waited for several hours before Det. Kelly advised him of the sexual abuse allegations against him. Muhleka consented to accompany Det. Kelly to the Sheriff's Office to speak with him. At the Sheriff's Office, Muhleka waived his Miranda rights and agreed to speak with Det. Kelly without an attorney. Muhleka denied all allegations at that time.
 {¶ 7} Upon leaving the hospital, Griesdorn instructed Trula Muhleka that she and her daughters were not permitted to live in the same residence as Muhleka. Consequently, Muhleka contacted Det. Kelly and asked if he could return to Nebraska for a short time. In Nebraska, Muhleka contacted Det. Kelly several times to inquire about the status of the case. During a telephone conversation with Det. Kelly on April 8, 2002, Muhleka learned that he was going to be charged with sexually abusing the victim. Muhleka left that day to travel from Nebraska to Ohio. At approximately 7 a.m., Muhleka contacted Det. Kelly to inform him that he had driven all night and had arrived in Dayton. Det. Kelly instructed Muhleka to rest for several hours and then call him to talk. Unable to rest, Muhleka called Det. Kelly shortly thereafter and asked that Det. Kelly transport him to the Sheriff's Office to discuss the case.
 {¶ 8} Det. Kelly testified that he had brought Muhleka to the detective's conference room in the Sheriff's Office. They smoked cigarettes and drank coffee. Despite driving all night, Muhleka did not appear to be tired. Instead, he was alert and coherent for the interview. According to Det. Kelly, Muhleka waived all of his rights and at no time did he request an attorney. During the interview, Muhleka admitted to four separate incidents between May of 2001 and March of 2002, where he had inappropriately touched the victim in her "crotch" area. Muhleka explained that in all instances he had "wet dreams" of his wife while sleeping either on the living room couch or in his bed next to the victim. Believing that the victim was his wife, Muhleka explained that he had found his hand rubbing the victim's "crotch," trying to arouse her. During another occurrence, he admitted to placing his fingers "in her crotch." Muhleka also explained to Det. Kelly that he once awoke with the victim's hands on his penis, but he could not recall if the victim's hands ended up there on her own or with his help.
 {¶ 9} To keep track of the incidents, Det. Kelly used the wipe-off board in the conference room to separate the incidents and identify the specifics of each occurrence. Following the verbal interview, Det. Kelly asked Muhleka if he would write out a statement; Muhleka complied. Muhleka was subsequently arrested.
 {¶ 10} Muhleka provided a different version of the events at trial. According to Muhleka, Det. Kelly explained that a rape conviction was a first degree felony which carried a life sentence. Muhleka claims that Det. Kelly, in an effort to help Muhleka reduce the charge to a felony of the fifth degree, suggested to Muhleka that there were four incidents and charted them on the wipe-off board. Det. Kelly provided the idea that the incidents were the result of "wet dreams" Muhleka had had about his wife in the presence of the victim. After completing the explanation of the events on the wipe-off board, Det. Kelly explained to Muhleka that he would, at most, receive probation for the charges. He instructed Muhleka to condense the notes into a written statement.
 {¶ 11} At the conclusion of his testimony, Muhleka maintained his innocence, stating that Det. Kelly had fabricated the incidents. Additionally, Muhleka stated that he had signed a stack of paperwork, including the waiver of his Miranda rights, at the close of the interview.
 {¶ 12} The jury found Muhleka guilty of gross sexual imposition, but could not reach a consensus as to his guilt on the rape charge. Muhleka was sentenced to five years incarceration on the gross sexual imposition charge and was ordered to register as a sexually-oriented offender.
 {¶ 13} Muhleka now appeals his conviction and sentence, asserting five assignment of error and an additional supplemental assignment of error.
 {¶ 14} Muhleka's first assignment of error:
 {¶ 15} "Appellant was denied effective assistance of counsel when counsel failed to object to an expert's testimony regarding the alleged child-victim's credibility."
 {¶ 16} Preliminarily, we note that in order to demonstrate ineffective assistance of counsel, Muhleka must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance, i.e., that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See Strickland,466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See, id.; State v. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 17} In his first assignment of error, Muhleka asserts error in trial counsel's failure to object to Dr. Ovide's opinion testimony that the victim was sexually abused. Muhleka argues that Dr. Ovide's opinion was based solely upon the victim's statements that she was abused, as there was no physical evidence present.
 {¶ 18} Muhleka's argument implicates State v. Boston
(1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, wherein the Ohio Supreme Court held that an expert witness in a child sexual abuse case may not testify as to the victim's veracity. The court found, however, that after examining a child, interviewing the child, and reviewing the child's medical history, an expert witness may testify as to whether there was sexual abuse. Id. at 128. This was clarified in State v. Stowers, 81 Ohio St.3d 260,1998-Ohio-632, 690 N.E.2d 881, when the court found that Boston
does not prohibit an expert from conveying a belief that a complaining child was sexually abused. Id. at 261. Additionally, it was determined that an expert may give an opinion "which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." Id. at 263. Thus, in Stowers, the Ohio Supreme Court permitted an expert to testify that the behavior of the child victims was consistent with the general behavior of other children who had been sexually abused. Id. at 260.
 {¶ 19} With the foregoing in mind, we turn to Dr. Ovide's testimony regarding the victim in this case. The portion of the transcript at issue relating to Dr. Ovide's opinion is as follows:
 {¶ 20} "Q. Okay. And were you able to form an impression to a reasonable degree of medical certainty with regard to this case?
 {¶ 21} "A. Yes.
 {¶ 22} "Q. And what was that impression?
 {¶ 23} "A. My impression was that the patient was sexually abused.
 {¶ 24} "Q. Now, can you explain to me, please. First of all, do you have differing degrees of impressions?
 {¶ 25} "A. Yes.
 {¶ 26} "Q. And explain that to me.
 {¶ 27} "A. In the majority of case[s], you assume, you suspect. In a very small percentage of cases, you can be certain, especially with no physical evidence.
 {¶ 28} "Q. Okay. Now, what terminology do you use with the varying degrees? Do you have different terminology that you use?
 {¶ 29} "A. Yes. If there are some suspicions that are serious, I would use the term `suspected'. If there are no physical findings and the history is not consistent with anything of value, I usually — the final impression is either alleged sexual abuse or concerns for sexual abuse.
 {¶ 30} "Q. And if you believe there is sexual abuse.
 {¶ 31} "A. I write sexual abuse.
 {¶ 32} "Q. And what was your medical finding in this case?
 {¶ 33} "A. Sexual abuse was my final impression."
 {¶ 34} (Tr. 128-129.)
 {¶ 35} On cross-examination, the following exchange occurred:
 {¶ 36} "Q. Not having found any bruises or trauma or anything like that, you felt based on the history that you were given that there may have been sexual abuse then?
 {¶ 37} "A. I felt strongly that there was."
 {¶ 38} (Tr. 144-145.)
 {¶ 39} Additionally, Dr. Ovide provided much testimony regarding the presence or lack of physical findings of sexual abuse. He explained that has he seen physical findings of abuse in less than ten percent of all alleged sexual abuse cases with a young victim. Dr. Ovide further testified that he based his findings of sexual abuse upon the information he received from his examination of the victim, the history of the family and the case, information he received from Trula Muhleka and Griesdorn, the interview with the victim, the review of the victim's drawing, and his past experience of dealing with approximately two hundred physically or sexually abused children.
 {¶ 40} We note that at no time did Dr. Ovide testify as to the veracity of the victim. Instead, he summed up his findings based upon all of the data he had in front of him, not just the victim's statements. We find, contrary to Muhleka's assertion, that Dr. Ovide's statement did not constitute his personal opinion as to the veracity of the victim's complaints.
 {¶ 41} Accordingly, Dr. Ovide did not violate the standard set by the Ohio Supreme Court in Boston. We find that defense counsel did not provide deficient representation by failing to object to portions of Dr. Ovide's testimony, as the result of the trial would not have been different if defense counsel had objected to the testimony. As a result, we find no prejudice and, therefore, no ineffective assistance of counsel based on the absence of objections to the doctor's statements.
 {¶ 42} We overrule Muhleka's first assignment of error.
 {¶ 43} Muhleka's second assignment of error:
 {¶ 44} "Appellant's conviction was against the manifest weight of the evidence[.]"
 {¶ 45} In his second assignment of error, Muhleka argues that his conviction was against the manifest weight of the evidence. In support of his argument, Muhleka asserts that there was an absence of physical findings of abuse, an apparent "lack of understanding" of the allegations on behalf of the victim, contradictions in the victim's testimony, a lack of inquiry about March 10, 2002 when questioning Muhleka, Muhleka's lack of criminal record, alleged improper conduct during the interview Det. Kelly had with Muhleka, and an absence of distress of the victim in the presence of Muhleka.
 {¶ 46} When reviewing a judgment under a manifest weight standard of review "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 47} Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 48} We have no problem finding extensive evidence to support the findings that Muhleka was guilty of gross sexual imposition. Muhleka was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which states that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Sexual contact is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 49} The victim testified that, on more than one occasion, Muhleka touched her "private" area underneath her clothes. The victim described her "private" area as the area between her legs which she uses to "pee-pee." The victim also stated that Muhleka instructed her to put her hand on his "privates" underneath his clothes and squeeze it until "white stuff came out."
 {¶ 50} Based upon the victim's testimony, there was evidence of sexual contact, and all of the elements of gross sexual imposition were proven.
 {¶ 51} Muhleka notes, however, several instances where the victim's testimony was "unreliable," and thus she should have been found to be "incredible." Muhleka first asserts that the State offered no physical evidence to prove he had sexual contact with the victim. As Dr. Ovide stated, in the majority of child sexual abuse cases there is no physical finding evidencing the abuse. Thus, the determinative issue for the jury was the truthfulness and credibility of the victim and Dr. Ovide. The victim testified to the abuse and the jury believed her. This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. See State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03. We find that in this case the jury did not lose its way, as evidenced in its failure to convict Muhleka of rape. Accordingly, we find no merit in this issue.
 {¶ 52} Muhleka next contends that the victim presented a lack of understanding of what "having sex" meant, and thus the gross sexual imposition conviction was against the manifest weight of the evidence. Although the victim did appear to be unsure of what "having sex" meant, she testified to details of the incidents that fit within the elements of gross sexual imposition. We thus find no merit in this issue.
 {¶ 53} Muhleka also claims that the victim was inconsistent in her testimony and contradicted herself on several occasions. In particular, she stated that she did not look at Muhleka's penis, but noted that "white stuff came out." Additionally, Muhleka contends that the victim was incredible, because she testified to several different time periods during which the abuse had occurred. We do recognize that the victim contradicted herself on minor facts which were incidental to the abuse, but these facts were not pertinent to the elements of gross sexual imposition. Even if the victim's testimony was contradictory, the jury was in the best position to weigh the evidence, and was free to believe all, some or none of the victim's testimony. State v.Jackson (1993), 86 Ohio App.3d 29, 33, 619 N.E.2d 1135.
 {¶ 54} In the last portion of this assignment of error, Muhleka challenges the victim's credibility because she failed to exhibit any signs of distress during the period subsequent to the March 10, 2002 incident.
 {¶ 55} We disregard the weight Muhleka places on the "lack of distress" of the victim, especially in light of testimony that Trula Muhleka had been aware of past allegations of abuse by Muhleka upon the victim, but had chosen to disregard the victim's version of events. The jury heard all of the testimony in this instance and chose to still believe the victim.
 {¶ 56} In all of these circumstances, we find that the jury did not lose its way in this case simply because it chose to believe the victim, which it was entitled to do. Furthermore, none of the victim's testimony was so incredible that it defied belief. Accordingly, we find no merit in these contentions.
 {¶ 57} In another portion of this assignment of error, Muhleka contends that his conviction was against the manifest weight of the evidence because the March 10, 2002 incident was never addressed in the interview with Det. Kelly.
 {¶ 58} We note that "the state was not obligated to make specific proof of time as alleged, provided the offenses charged were established as having occurred within a reasonable time in relation to the dates fixed in the indictment." State v. Fowler
(1985), 27 Ohio App.3d 149, 154, 500 N.E.2d 390, citing State v.Carey (1958), 107 Ohio App. 149, 156, 157 N.E.2d 381, 8 O.O.2d 49. For this reason, we overrule this portion of the assignment of error.
 {¶ 59} Finally, Muhleka contends that the jury should have found his testimony credible. In support, he claims that he has had many "opportunities for sexual misconduct with minors" but has never been charged with a crime. Furthermore, because he provided a credible explanation for the events, it was error for the jury to disregard his testimony.
 {¶ 60} Again, we must give deference to the jury's conclusions regarding the witnesses' credibility.
 {¶ 61} Reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Muhleka's conviction is not against the manifest weight of the evidence.
 {¶ 62} The second assignment of error is overruled.
 {¶ 63} Muhleka's third assignment of error:
 {¶ 64} "The trial court erred in admitting evidence and testimony over objection[.]"
 {¶ 65} Muhleka argues that State's Exhibit 9, a copy of a picture drawn by the victim, should not have been admitted over objection because no testimony or other evidence was presented at trial that the original could not be found.
 {¶ 66} We disagree. The Staff Notes to Evid.R. 1003 indicate that a duplicate is the equivalent of an original, and hence, is the best evidence. See State v. Williams (1982),7 Ohio App.3d 160, 161, 454 N.E.2d 1334. The Staff Notes further indicate that the party opposing the introduction of the duplicate as the best evidence has the burden of proving that there is a genuine question as to the authenticity of the original or that it would be unfair to admit the duplicates. Doctors Bldg. Partnership v.Cedar Creek Realty (June 23, 1995), Lucas App. No. L-94-060. The Staff Notes provide that the objection must be "something more than a frivolous objection." Williams, supra, at 161. Furthermore, the admissibility of the duplicate is within the discretion of the trial court. Lakeview Dairy Services, Inc. v.Dangler (1989), 65 Ohio App.3d 753, 757, 585 N.E.2d 472.
 {¶ 67} In this case, other than making a general assertion that no evidence existed that the original could not be found, Muhleka failed to raise a specific challenge regarding the authenticity of the original documents. Muhleka did not claim at trial, nor does he argue on appeal, that the picture was not a proper duplicate of the original, or that it would be unfair to admit the copy. We note that the victim testified to having drawn the picture of the hand and the penis, and she had identified the images as being her hand and Muhleka's penis. Based upon the record before us, we cannot say that the trial court erred by admitting the exhibit, as it was properly authenticated.
 {¶ 68} Muhleka also asserts that Dr. Ovide should not have been permitted to give opinion testimony based upon "generalized familiarity with `research'" without being made to disclose the research upon which his opinion was based.
 {¶ 69} The trial court's determination of admissibility of expert testimony is guided by the requirements of Evid.R. 702, which address the qualifications necessary to accord a witness "expert" status:
 {¶ 70} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 71} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 72} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 73} Expert testimony should be admitted only if the reasoning or methodology underlying the testimony is scientifically valid. Miller v. Bike Athletic Co.,80 Ohio St.3d 607, 611, 1998-Ohio-178, 687 N.E.2d 735, citing Daubert v.Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579,113 S.Ct. 2786, 125 L.Ed.2d 469. In determining the reliability of the testimony, the court should consider several factors: "(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." Id.
 {¶ 74} Furthermore, the weight to be given a witness' testimony is an issue of credibility. The credibility of any witness is a matter left primarily to the trier of fact. Simoniv. Simoni (1995), 102 Ohio App.3d 628, 634, 657 N.E.2d 800. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 75} In this case, Muhleka stipulated to Dr. Ovide's qualifications as an expert. At issue is Dr. Ovide's reliance on research upon which he based part of his opinion that the victim had been abused. Muhleka asserts that this was an abuse of discretion, as counsel was unable to effectively cross-examine Dr. Ovide on this matter. Specifically, Muhleka claims that defense counsel should have been "supplied" with the research upon which Dr. Ovide produced his opinion.
 {¶ 76} We disagree. We note that Dr. Ovide's testimony was based upon specialized knowledge in accordance with Evid.R. 702(C). The phrase "other specialized knowledge" as found in the rules means information that has been acquired by that person through experience, training, or education and that would assist the trier of fact in understanding the evidence or a fact at issue that is beyond common experience. State v. Stowers
(1998), 81 Ohio St.3d 260, 262, 690 N.E.2d 881. The expert's opinion may be based on facts or data perceived by him or it may be drawn from knowledge gained from other experts in the field.State v. Lawson (Feb. 28, 2000), Butler No. CA99-01-003.
 {¶ 77} As stated in State v. Echols (1998),128 Ohio App.3d 677, 698, 716 N.E.2d 728, "it is perfectly proper for an expert to rely upon `facts or data * * * perceived by him,' Evid.R. 703, as well as to draw upon knowledge gained from other experts in the field, whether this knowledge was communicated orally or in writing. This information forms the `scientific, technical, or other specialized knowledge' which qualifies the witness as an expert. Evid.R. 702." (Citations omitted.)
 {¶ 78} Additionally, we note that an expert is not permitted, under the Ohio Rules of Evidence, to directly quote from or mention the titles of articles or treatises. Id., citing Pool v.Wade (1996), 115 Ohio App.3d 449, 456, 685 N.E.2d 791.
 {¶ 79} We note that Dr. Ovide's expert opinion is the product of much research and knowledge gained by being familiar with his field, and in this case specific names of titles or treatises would not have been admissible at trial. There is nothing in the record demonstrating that such information was withheld from defense counsel prior to trial. Furthermore, defense counsel failed to elicit such information from Dr. Ovide upon cross-examination, and defense counsel did not try to impeach Dr. Ovide with scientific information indicating differing conclusions.
 {¶ 80} Given all the above facts and case law, it is difficult to conclude that the trial court abused its discretion by allowing Dr. Ovide's testimony.
 {¶ 81} Accordingly, we overrule Muhleka's third assignment of error.
 {¶ 82} Muhleka's fourth assignment of error:
 {¶ 83} "Appellant was denied a fair trial through prosecutorial misconduct."
 {¶ 84} Preliminarily, we note that in analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, 749 N.E.2d 300, citing State v.Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips
(1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v. Loza (1994),71 Ohio St.3d 61, 78, 1994-Ohio-409, 641 N.E.2d 1082. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 85} Generally, prosecutors are entitled to considerable latitude in closing argument. State v. Ballew,76 Ohio St.3d 244, 255, 1996-Ohio-81, 667 N.E.2d 369; State v. Stevens,
Montgomery App. No. 19572, 2003-Ohio-6249, ¶ 34. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom."State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting State v. Stephens (1970), 24 Ohio St.2d 76, 82,263 N.E.2d 773. "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced." Stevens, supra, citing Ballew, supra, andState v. Lorraine (1993), 66 Ohio St.3d 414, 420,613 N.E.2d 212.
 {¶ 86} "In determining whether a given remark amounts to prosecutorial misconduct, an appellate court should consider the following elements: (1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether corrective instructions were given by the trial court; and (4) the strength of the evidence against the defendant." State v. Bibbs (1999), Lucas App. No. L-97-118, citing State v. Braxton (1995),102 Ohio App.3d 28, 41, 656 N.E.2d 970; State v. Mann (1993),93 Ohio App.3d 301, 312, 638 N.E.2d 585.
 {¶ 87} Muhleka claims that the prosecutors (1) laughed and giggled at his testimony, precipitating the trial court to remove the jury from the courtroom to administer an admonishment; (2) inflected too much emotion into the closing argument; and (3) attacked defense counsel during closing argument.
 {¶ 88} Muhleka first claims that the prosecutor improperly "laughed and giggled" at his testimony, leading to the trial court's admonishment of the prosecutors outside the presence of the jury. According to Muhleka, this conduct rises to the level of "improper suggestions [and] insinuations" under State v.Keenan (1992), 66 Ohio St.3d 402, 613 N.E.2d 203.
 {¶ 89} We disagree. We have reviewed the transcript and the videotape and find no misconduct. Although the record recites the trial court's brief admonishment of the prosecutors, the transcript does not document any such actions on behalf of the prosecutors and the videotape discloses no misconduct. We further agree with the State that the trial court's choice to admonish the prosecutors outside the presence of the jury indicates that the jury was not aware of the alleged misconduct.
 {¶ 90} Additionally, this incident differs from that inKeenan, supra. In Keenan, the prosecutor directed comments to the jury regarding defense counsel being "paid" to "get [the defendant] off the hook" and "tell you their client was innocent." Id. at 405-406. The trial court found this action to be improper, and was part of the reason the court reversed the defendant's conviction.
 {¶ 91} We do not find that level of misconduct here. Even if we were to assume that the prosecutors were laughing and giggling as mentioned by the trial court, a review of the entire record reveals no prejudicial error. In any event, Muhleka has failed to portray any prejudice that resulted from these matters. The record does not support the argument that the conduct influenced the jury's determination and prejudiced Muhleka. Evidence of this is that Muhleka was not convicted of the rape charge. As such, we find no prosecutorial misconduct in this instance.
 {¶ 92} Muhleka also asserts that the State "substituted emotion for reasoned advocacy" when the prosecutor stated during closing argument, "Sometimes the strength of a prosecution's case cannot even begin to equal the horror of the crime. [The victim's] childhood was forever altered, her innocence was stolen from him {sic}. And imagine being abused by the very man that you called daddy." Muhleka claims that this "emotional inflammation" equated to prosecutorial misconduct.
 {¶ 93} We disagree. We note that defense counsel failed to object to these closing remarks at trial, and thus the claimed misconduct is waived unless there is plain error. State v.Slagle (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916. The standard for plain error is the same standard of review as prosecutorial misconduct in closing arguments, that is, whether the accused's substantial rights are so adversely affected as to undermine the fairness of the guilt determining process. Statev. Swanson (1984), 16 Ohio App.3d 375, 377, 476 N.E.2d 672. Plain error occurs when, but for the error, the outcome of the trial clearly would have been otherwise. State v. Cooperrider
(1983), 4 Ohio St.3d 226, 448 N.E.2d 452.
 {¶ 94} In this case, we do not find that the prosecutor's remarks denied Muhleka a fair trial, nor do we find that the outcome of Muhleka's trial would have been different had the remarks not been made. While the remarks were emotional in nature, they were not "so inflammatory as to render the jury's decision a product solely of passion and prejudice against the appellant." Bibbs, supra; State v. Williams (1986),23 Ohio St.3d 16, 20, 490 N.E.2d 906. Furthermore, upon review of the record, there was ample evidence upon which the jury could base its verdict of guilty on the charge of gross sexual imposition.
 {¶ 95} Muhleka further claims that the prosecutor improperly impugned defense counsel during closing argument. The first set of remarks in question arose during the State's rebuttal closing, when the prosecutor commented on the contradictions within the victim's testimony by stating, "This was supposed to be a search for truth, not an attempt to confuse a little girl." The prosecutor further stated, "He [defense counsel] was asking her questions that even we couldn't follow."
 {¶ 96} Again, we will review the remarks under the plain error standard as defense counsel did not object to the remarks at trial. The majority of defense counsel's closing argument focused on inconsistencies within the victim's testimony. We find that the prosecutor's remarks focused on the explanation of these inconsistencies in response to defense counsel's attack of the victim's credibility. Although the prosecutor could have worded the statement without making references to defense counsel's line of questioning, the statements do not rise to the level of misconduct, and ample evidence exists to support Muhleka's conviction. In viewing the argument as a whole, we cannot say that but for the comments, Muhleka would not have been convicted.
 {¶ 97} Finally, Muhleka asserts that the following remarks during closing argument were inappropriate and rose to the level of prosecutorial misconduct: "She [the victim] came into this courtroom. She took a stand And, once again, [the victim] asked for help. And this time she hopes somebody was listening." Again, these remarks were not "so inflammatory as to render the jury's decision a product solely of passion and prejudice against the appellant." Bibbs, supra; Williams, supra. The prosecutor was merely referencing the testimony at trial that the victim had disclosed the abuse prior to this incident, but her mother chose not to believe her. For these reasons, we do not find the remarks to be improper.
 {¶ 98} Based on the entire record before us, we cannot conclude that the remarks in question were so egregious that they precluded Muhleka from having a fair trial. As such, Muhleka's fourth assignment of error is overruled.
 {¶ 99} Muhleka's fifth assignment of error:
 {¶ 100} "The cumulative effect of the errors occurring at trial deprived Appellant of a fair trial."
 {¶ 101} Muhleka contends that his conviction should be reversed because the cumulative effect of the errors occurring at trial deprived him of his right to a fair trial. As noted above, however, Muhleka's first, second, third, and fourth assignments of error lack merit. Muhleka was not deprived of a fair trial due to ineffective assistance of counsel because defense counsel failed to object to Dr. Ovide's testimony regarding his opinion that the victim was abused. Muhleka's conviction for gross sexual imposition is not against the manifest weight of the evidence. The trial court did not err in authenticating a copy of the victim's drawing at trial, nor did it err in admitting Dr. Ovide's expert testimony. Muhleka was not deprived of a fair trial due to prosecutorial misconduct.
 {¶ 102} We thus find no cumulative error in this record of a magnitude that would have deprived Muhleka of his right to a fair trial. Muhleka's fifth assignment of error is overruled.
 {¶ 103} Muhleka poses one supplemental assignment of error:
 {¶ 104} "The court erred in failing to suppress Appellant's involuntary statements to the police[.]"
 {¶ 105} Muhleka maintains that he was subject to psychological pressure during his interview with Det. Kelly, in that he was unable to sleep for a lengthy period of time. Consequently, his statement and written confession were not voluntary and the trial court erred in failing to suppressed them.
 {¶ 106} We disagree. When reviewing suppression decisions, a reviewing court does not evaluate credibility, but instead determines if the trial court properly applied the law. State v.Woods (1996), 113 Ohio App.3d 240, 244, 680 N.E.2d 729. Therefore, we must "accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v.Retherford (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498.
 {¶ 107} The prosecution has the burden of proving that a defendant voluntarily, knowingly, and intelligently waivedMiranda rights, and that any confession was voluntary. Statev. Phillips (Aug. 11, 2000), Montgomery App. No. 18049. In either event, the same test applies, i.e., "whether the actions are voluntary under the totality of the circumstances, `including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" Id. (Citations omitted).
 {¶ 108} We have previously stated that the "totality of the circumstances analysis is triggered by evidence of police coercion." Id., citing State v. Clark (1988),38 Ohio St.3d 252, 261, 527 N.E.2d 844. We also noted that a "suspect's impaired mental condition at the time of the waiver and the confession has some bearing on the issue of the voluntariness but only as to whether police officers deliberately exploit the suspect's mental condition to coerce the waiver and confession."Phillips, supra. (Citations omitted).
 {¶ 109} At the suppression hearing, Det. Kelly testified that he went to CMC on March 14, 2002 to investigate a possible sexual abuse case. After speaking with Dr. Ovide and Griesdorn from CSB, Det. Kelly requested that Muhleka accompany him to the police station to talk about the allegations. Muhleka willingly went with Det. Kelly, waived his rights, and spoke with him for almost an hour. No written statement was taken, and Muhleka did not make a request to terminate the interview at any time.
 {¶ 110} The next day, Muhleka, upon permission of Det. Kelly, traveled back to Omaha Nebraska. Several telephone contacts were made by Muhleka to Det. Kelly while he was in Nebraska to determine the status of the investigation. During one such call on April 8, 2002, Det. Kelly informed Muhleka that charges were being brought against him and he was asked to return to Dayton, Ohio. Muhleka left for Dayton at approximately 6:30 p.m. on April 8, 2002, drove through the night, and arrived in Dayton at 7:00 a.m. on April 9, 2002. Muhleka spoke with Det. Kelly at that time, and Det. Kelly told Muhleka to rest before coming in to the station to speak with him. Muhleka called Det. Kelly at 8:00 a.m., unable to sleep, and asked Det. Kelly to pick him up.
 {¶ 111} Det. Kelly brought Muhleka to the detective's conference room at approximately 10:00 a.m. He showed Muhleka a pre-interview Miranda rights waiver form and read him his rights. Muhleka initialed the form, explaining that he understood his rights and wished to waive them to speak with Det. Kelly. Muhleka claims that he requested an attorney during the interview. Det. Kelly, however, testified that Muhleka did not ask for an attorney at any point during the interview.
 {¶ 112} The trial court found that Muhleka understood and waived his Miranda rights, and had made voluntary statements to Detective Kelly during both interviews. The trial court further found that prior to the April 8, 2002 interview, Muhleka had not slept as he had driven through the night from Nebraska to Dayton, Ohio. Muhleka contacted Det. Kelly upon arriving in Dayton, and Det. Kelly told Muhleka to "get some sleep" before he would speak with him. Despite this, Muhleka called back soon thereafter for Det. Kelly to pick him up and transport him to be interviewed.
 {¶ 113} The trial court stated, "Detective Kelly testified that Muhleka did not appear tired. In addition, Muhleka continually initiated contact with Detective Kelly from the time of the first interview until he was picked up at his Dayton residence at 9:00 a.m., on April 9, 2002. These facts fail to show that Muhleka's statements were involuntary. Moreover, the Defendant's lack of credibility also makes it clear that he never requested a lawyer, as he now claims." (Doc. No. 21, p. 4.)
 {¶ 114} The trial court overruled Muhleka's motion to suppress, concluding that he knowingly, intelligently, and voluntarily waived his Miranda rights to respond to Det. Kelly's interrogation. As the Ohio Supreme Court has said, "[a]n accused's signed waiver form is strong proof that such waiver was valid." State v. Nields (2001), 93 Ohio St.3d 6, 14,752 N.E.2d 859. (Citations omitted.)
 {¶ 115} We agree with the trial court that Muhleka knowingly, intelligently and voluntarily
 {¶ 116} waived his Miranda rights prior to making his oral and written statements to Det. Kelly. Det. Kelly testified that his interview with Muhleka lasted between three and four hours, and during that time Muhleka did not appear groggy or tired, and he did not request that the interview be terminated. UnderRetherford, 93 Ohio App.3d at 592, we must accept the trial court's findings of fact as true and we find that they did meet the applicable legal standard. Accordingly, we find no error in the trial court's decision and find no merit in Muhleka's argument that his will was overborne by psychological pressure due to sleep deprivation.
 {¶ 117} We overrule Muhleka's final assignment of error.
 {¶ 118} The judgment of the trial court is affirmed.
Judgment affirmed.
Brogan and Wolff JJ., concur.