[Cite as *State v. Sinha*, 2013-Ohio-5203.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : CASE NO. CA2012-11-237

     : O P I N I O N
- vs - 11/25/2013

     :

DHANANJAY SINHA, :

    Defendant-Appellant. :

CRIMINAL APPEAL FROM BUTLER COUNTY COURT AREA III COURT
Case No. CRB1200702A-F

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Jonathan N. Fox, 8310 Princeton-Glendale Road, West Chester, Ohio 45069, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Dhananjay Sinha, appeals the decision of the Butler County Area III Court to deny his motion to suppress.[1]

{¶ 2} The West Chester Police Department was conducting surveillance on an

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

apartment where the inhabitants were known for "trafficking high grade marijuana in large quantities." An undercover detective working surveillance observed a car approach the apartment building, and saw Sinha exit the car and enter the apartment in question. The detective recognized Sinha from "previous arrests and interviews." Once Sinha exited the apartment, the detective notified Officer Jason Flick of the circumstances surrounding his surveillance, and asked Officer Flick to perform a stop of Sinha's car.

{¶ 3} Officer Flick saw Sinha's car traveling on Fountains Boulevard, a residential street with a posted speed limit of 35 m.p.h., and observed that Sinha was exceeding the posted speed limit. Sinha's vehicle was also missing a front license plate, and Officer Flick observed Sinha run a red light through the intersection of Fountains Boulevard and Cincinnati-Dayton Road. Based upon the three traffic violations Officer Flick observed, as well as the detective's information regarding Sinha's possible involvement in drug transactions at the apartment, Officer Flick stopped Sinha.

{¶ 4} Sinha, who was 18 years old, admitted to the traffic offenses and claimed that he was late for a test at school. As Sinha spoke, Officer Flick noticed that the front license plate was sitting on the passenger front seat, and that there was "marijuana shake," (lose marijuana leaves and debris), on a backpack located in the rear seat of the car. Officer Flick's partner approached the passenger side of the car, and verified that he too observed marijuana shake in the backseat of Sinha's car. Officer Flick then asked for Sinha's license and registration information, and also requested that Sinha exit his car. Officer Flick advised Sinha that he was going to issue a warning citation for the missing license plate, and asked Sinha to accompany him to his police cruiser.

{¶ 5} During the time that it took Officer Flick to run Sinha's information and issue the citation, Sinha sat in the back of Officer Flick's police cruiser, which was Officer Flick's normal operating procedure anytime he issued a citation. While Officer Flick prepared the citation,

he engaged Sinha in conversation, and Sinha stated that he had been at the apartment playing video games and was on his way to school to take a test. Officer Flick then received information from the police system that Sinha had received prior citations for possession of marijuana. When Officer Flick asked Sinha if he had ever been in trouble, Sinha confirmed that he had received prior citations for marijuana possession.

{¶ 6} Once Officer Flick issued the citation, he and Sinha exited the police cruiser. At that time, Officer Flick asked Sinha if there was anything illegal in his car. Sinha then informed Officer Flick that he was not an American citizen and that he could be deported if he were to get into trouble. Sinha told Officer Flick that he no longer smoked marijuana and that there was nothing illegal in the car. When Officer Flick asked Sinha if he could search the car, Sinha replied "Go ahead. There's nothing in there. I don't smoke anymore."

{¶ 7} Officer Flick searched Sinha's car, and found five GPS units, two cellular phones, and two iPods in a backpack in the backseat of the car. Based upon his years of experience, Officer Flick immediately suspected that the items were stolen. Sinha told Officer Flick that the backpack did not belong to him, even though Officer Flick found Sinha's high school identification card inside the backpack. Officer Flick also found a can of beer behind the driver's seat, as well as a glass pipe that contained burnt marijuana residue. Officer Flick collected the evidence, but did not arrest Sinha at that time.

{¶ 8} Once Officer Flick verified that the items had been stolen, he filed criminal complaints against Sinha for four counts of receiving stolen property, and single counts of possession of drug paraphernalia and underage possession of alcohol. Sinha filed a motion to suppress, claiming that his consent to search the vehicle was involuntarily given because Officer Flick had already given him the citation, thus terminating the valid traffic stop. The trial court held a hearing, during which time, Officer Flick testified. The trial court overruled Sinha's motion to suppress, and Sinha pled no contest to the charges. The trial court found

Sinha guilty of the charges and imposed a sentence, including 180 days in jail. Sinha now appeals the trial court's decision to overrule his motion to suppress, raising the following assignment of error.

{¶ 9} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS BECAUSE THE APPELLANT WAS UNLAWFULLY DETAINED AFTER THE CONCLUSION OF THE TRAFFIC STOP AND HE DID NOT VOLUNTARILY CONSENT TO THE SEARCH OF THE VEHICLE.

{¶ 10} Sinha argues in his assignment of error that the trial court erred in denying his motion to suppress.

{¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran,* 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis,* 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 12} Sinha does not challenge the validity of Officer Flick's initial traffic stop, and instead, argues that his consent was involuntarily given because the lawful purpose for the traffic stop ended once Officer Flick issued the citation. However, Ohio law is clear that if during an initial traffic stop, "an officer ascertains reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *State v. Smith*, 12th Dist. Warren App. No. CA2012-03-

- 4 -

022, 2012-Ohio-5962, ¶ 13, citing *State v. Robinette,* 80 Ohio St.3d 234, 241 (1997). Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Bobo,* 37 Ohio St.3d 177, 178 (1988).

{¶ 13} "In forming reasonable articulable suspicion, law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Smith* at ¶ 14, quoting *State v. Troutman,* 3d Dist. Marion No. 9-11-17, 2012-Ohio-407, ¶ 25, quoting *United States v. Arvizu,* 534 U.S. 266, 273-274, 122 S.Ct. 744 (2002). Therefore, determining whether the officer's actions were justified depends upon the totality of the circumstances, which must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87 (1991).

{¶ 14} When the subject of a search is not in custody and the state attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that the state demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. *Smith* at ¶ 18, citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 248-249, 93 S.Ct. 2041 (1973).

{¶ 15} In addition to the existence of police duress or coercion, factors to be considered when determining whether consent is given voluntarily include: the suspect's custodial status and the length of the initial detention, whether the consent was given in public or at a police station, the presence of threats, promises, or coercive police procedures, the words and conduct of the suspect, the extent and level of the suspect's cooperation with the police, the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law," and the suspect's education and intelligence. *Smith* at ¶ 18, citing

*Schneckloth.*

{¶ 16} "Whether an individual voluntarily consented to a search is a question of fact, not a question of law." *State v. Christopher*, 12th Dist. No. CA2009-08-041, 2010-Ohio-1816, ¶ 43. A voluntariness inquiry requires an assessment of the credibility of the evidence so that the trier of fact is in the best position to make this determination. *Id.*

{¶ 17} The record indicates that Sinha committed three separate traffic violations in Officer Flick's presence. Officer Flick stopped Sinha based on the traffic violations, as well as the information forwarded to him by the undercover detective who was performing surveillance on the apartment known for drug activity. The detective informed Officer Flick that Sinha was seen arriving at and leaving the apartment, and that the detective recognized Sinha from past drug arrests and interviews regarding narcotics. Once Officer Flick approached the vehicle, he clearly saw marijuana shake in the backseat of Sinha's car, and this observation was confirmed by Officer Flick's partner who made the same observation. During the investigation into the traffic violations, Officer Flick also ascertained information that Sinha had been previously arrested for drug possession. These specific facts, when taken together with their rational inferences, establish reasonably-articulable facts giving rise to a suspicion of criminal activity. Officer Flick was therefore able to further detain Sinha and implement a more in-depth investigation of him.

{¶ 18} Regarding the voluntariness of Sinha's consent, the record indicates that Sinha was not in custody at the time Officer Flick asked for his consent to search the car, and that Officer Flick had performed the initial traffic stop in a reasonable amount of time. Sinha gave his consent to search his car near the public road way, rather than being at the police station or in an area controlled by the police. The record does not indicate that Officer Flick or his partner made any threats or promises, nor did they engage in any coercive police procedures. Sinha's own words and conduct indicate that he tried to convince Officer Flick

that he no longer smoked marijuana and also assured Officer Flick that there were no illegal items in the car. The record also indicates that Sinha was cooperative with Officer Flick, and that as someone who had a criminal history, was not a newcomer to the law. Although Sinha was a high school student, there is no indication in the record that he did not possess adequate intelligence to understand the circumstances before he consented to the search.

{¶ 19} After reviewing the record, we find that the state demonstrated that Sinha's consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Sinha's sole assignment of error is therefore overruled.

{¶ 20} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.