[Cite as *State v. Vansickle*, 2014-Ohio-1324.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-03-005 |
| | : | O P I N I O N |
| - vs - | | 3/31/2014 |
| | : | |
| PAUL VANSICKLE, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 12CRI00175


Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Elizabeth N. Gaba, 1231 East Broad Street, Columbus, Ohio 43205, for defendant-appellant


**RINGLAND, P.J.**

{¶ 1}  Defendant-appellant, Paul Vansickle, appeals his conviction in the Fayette County Court of Common Pleas for unlawful sexual conduct with a minor.  For the reasons stated below, we affirm the decision of the trial court.

{¶ 2}  On September 12, 2012, Vansickle was indicted on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A).  The charge arose out of allegations that on May 19, 2012, Vansickle engaged in sexual conduct with G.M., a 15-year-

old girl.

{¶ 3}  During the pendency of the case, Vansickle filed a motion to suppress both statements he made to the police as well as certain body, clothing, and DNA evidence.  On January 11, 2013, the trial court overruled Vansickle's motion to suppress.  A two-day jury trial was held beginning on January 22, 2013 where several witnesses testified regarding the incident.

{¶ 4}  Shannon Hedges, the mother of G.M., testified that her boyfriend, John Baird, woke her in the early morning hours of May 19, 2012.  Baird told Hedges that there were persons in her home and to go to her daughter's room.  Upon entering her daughter's room, Hedges found G.M., Christopher Arnold, and Vansickle.  She explained that "Christopher Arnold [was] sitting on the right hand side of [G.M.'s] room, with a fully erect penis."  Hedges then saw another man and explained that G.M. was "sitting up out of [Vansickle's] lap wiping the corners of her mouth.  And him, I don't recall exactly how it was, I know he had been in the process of moving a covering garment over his lap."  Hedges yelled at the pair, asked the men, "do you realize that she's 15 years old," told them to leave her home, and called the police.

{¶ 5}  After the men left, Hedges took G.M. to Fayette County Memorial Hospital for a sexual assault examination where a nurse collected vaginal, perianal,[1] and oral samples and a sample from G.M.'s underwear for analysis by the police.  The next morning, Vansickle came back to Hedges' home and apologized.  He stated that he did not know G.M. was 15 years old.  Hedges admitted that G.M. looks older than her age due to her large stature and because G.M. smokes cigarettes, occasionally drinks alcohol, and does not attend school.

---

1. During trial, the perianal swab was referred to as the "anal" swab.  However, the nurse who completed the sexual assault explained that she only swabbed the perianal area, which is the area between the vaginal opening and the anus.  Therefore, we refer to this swab as the "perianal" swab.

{¶ 6} G.M. testified that in the early morning hours of May 19, 2012, Arnold and Vansickle came over to her home. Arnold asked G.M. to have sex with him and with Vansickle. At first, G.M. refused but eventually agreed because she wanted Arnold to like her. The men came back to her room, took off their pants, and exposed their penises. G.M. had vaginal intercourse with one man and then switched and had vaginal intercourse with the other man. After the intercourse, G.M. performed fellatio on Vansickle and Arnold. While this was occurring, Baird came into the room. Moments after Baird's interruption, G.M.'s mother came into the room and kicked the men out of the home.

{¶ 7} G.M. stated that on May 19, 2012 she was 15 years old. G.M. knew Arnold and Vansickle from the previous town they lived in and frequently saw them at the city park. G.M. often hung out at the park during the day because she was not attending school. She also stated that she smokes cigarettes and drinks alcohol and explained that she buys cigarettes from people who are over 18.

{¶ 8} Fayette County Sheriff's Office Sergeant Ryan McFarland testified that he investigated a complaint that Vansickle had engaged in sexual conduct with G.M. On the morning of May 19, 2012, McFarland and another officer went to Vansickle's home and requested Vansickle and Arnold come to the Sheriff's Annex to discuss the incident. McFarland recorded his conversation with Vansickle and this recording was played at trial. During the interview, Vansickle at first denies having sex with G.M., stating that he asked her how old she was and told her she was "way too young" because he is 22 years old. He stated, "I'm 22 years old and I'm not messing with no 15 year old girl." He explained that G.M. was "rubbing his leg" and he again told her, "I can't do this, I'm 22 years old." Later in the interview, he stated that G.M. performed "oral sex" on him but denied ever engaging in vaginal sex with G.M.

{¶ 9} At the end of the interview, Vansickle consented to allow the police to take the

clothes he wore the night of the incident as well as take a buccal swab from the inside of his cheek and test the samples for DNA. The samples were taken and then submitted to the Ohio Bureau of Criminal Investigation (BCI) for testing.

{¶ 10} McFarland visited Vansickle's home a second time on September 5, 2012. McFarland had just received the laboratory results analyzing G.M.'s and Vansickle's body and clothing samples and wished to discuss the case with Vansickle. During this conversation, Vansickle stated that "he had done nothing except got head from [G.M.] and didn't know why his DNA would have been found anywhere else."

{¶ 11} Two BCI forensic scientists also testified at trial and explained that they tested the samples obtained from G.M. and Vansickle. Peter Tassi explained that he tested samples submitted by Vansickle and G.M. for bodily fluids and identified semen present in G.M.'s vaginal and perianal swabs and G.M.'s underwear. Another scientist, Hallie Garofalo explained that she tested Vansickle's and G.M.'s samples for DNA. Garofalo testified that to a reasonable degree of scientific certainty, she found Vansickle's DNA on G.M.'s vaginal and perianal swabs and on G.M.'s underwear.

{¶ 12} Lastly, Vansickle testified regarding the incident. He stated that he and Arnold were at G.M.'s home for about 30 minutes before they went to the bedroom with G.M. In the bedroom, G.M. told Vansickle that she wanted to have sex with both men and unzipped Vansickle's pants. Eventually, Baird and G.M.'s mother came into the room and kicked them out. He stated that he did not realize G.M. was 15. When he arrived at G.M.'s home that night, he was very drunk and tired and G.M. was smoking cigarettes and drinking alcohol. During a previous interaction with G.M., Vansickle stated that she asked him for a cigarette and told him that she was 18 years old. Vansickle testified that he first realized that G.M. was 15 when her mother screamed at the men and told them to get out of her home. Vansickle also explained that during his interview with the police the following morning, he

was still intoxicated and had slept very little.

{¶ 13} During trial, the court refused to allow Vansickle's attorney to present two witnesses and to re-call G.M. for cross-examination during the defense's case-in-chief. Additionally, the court refused Vansickle's proposed jury instructions regarding a defense of mistake of fact as to G.M.'s age. At the conclusion of the trial, the jury found Vansickle guilty of unlawful sexual conduct with a minor. Vansickle was sentenced to two years of community control sanctions and classified as a Tier II sex offender.

{¶ 14} Vansickle now appeals, asserting seven assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE TRIAL COURT ERRONEOUSLY REFUSED TO CHARGE THE JURY WITH HIS REQUESTED JURY INSTRUCTION ON THE DEFENSE THEORY OF MISTAKE OF FACT AND MISTAKE OF AGE, TO THE PREJUDICE OF DEFENDANT, AND IN VIOLATION OF HIS RIGHTS UNDER THE 5TH, 6TH, AND 14TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE I, SEC. 16 OF THE OHIO CONSTITUTION.

{¶ 17} Assignment of Error No. 2:

{¶ 18} DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE TRIAL COURT ERRONEOUSLY FAILED TO INSTRUCT THE JURY ON ALL THE ESSENTIAL ELEMENTS OF THE CHARGED OFFENSE, TO THE PREJUDICE OF DEFENDANT.

{¶ 19} We will address Vansickle's first and second assignments of error together as they both concern jury instructions. Vansickle argues that the court erred when it refused to instruct the jury regarding the defense of mistake of fact as to G.M.'s age. Additionally, he argues that the court erred when it did not instruct the jury about the difference between recklessness and negligence.

{¶ 20} A trial court must fully and completely give jury instructions which are relevant

and necessary for the jury to weigh the evidence and discharge its duty as fact finder. *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Ordinarily, requested instructions should be given if they are correct statements of the law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction. *State v. Lawson*, 12th Dist. Butler No. CA99-12-226, 2001 WL 433121, *8 (Apr. 30, 2001), citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585 (1991). Even if a requested instruction is a correct, pertinent statement of law, the trial court can refuse to give the requested instruction verbatim as long as the instruction it gives is substantively the same as the requested instruction. *State v. Rawson*, 7th Dist. Jefferson No. 05 JE 2, 2006-Ohio-496, ¶ 4.

{¶ 21} "It is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case." *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), paragraph two of the syllabus. The proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion, and if so, whether that refusal was prejudicial. *State v. Campbell,* 12th Dist. Butler No. CA2009-08-208, 2010-Ohio-1940, ¶ 12. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 22} Vansickle was convicted of engaging in unlawful sexual conduct with a minor in violation of R.C. 2907.04(A). The statute provides,

> No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

{¶ 23} Vansickle argues that the defense of mistake of fact instruction to the jury

- 6 -

would have refuted that he was reckless in regard to his understanding of G.M.'s age. He maintains that G.M.'s appearance, her behavior in drinking alcohol and smoking cigarettes, her failure to attend school, her prior representation to Vansickle that she was over 18, and Vansickle's friends' beliefs about G.M.'s age establish that Vansickle was mistaken and not reckless as to G.M.'s age.[2]

{¶ 24} "Generally, mistake of fact is a defense if it negates a mental state required to establish an element of a crime." *State v. Cooper*, 10th Dist. Franklin No. 09AP-511, 2009-Ohio-6275, ¶ 9, citing *State v. Pecora*, 87 Ohio App.3d 687, 690 (9th Dist.1993). "Mistake of fact is widely recognized as a defense to specific intent crimes such as theft since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal." *Cooper* at ¶ 9*, citing *Farrell v. State*, 32 Ohio St. 456 (1877). In other words, "mistake of fact can, in an appropriate circumstance, negate either 'knowingly' or 'purposely.'" *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 64, quoting *State v. Snowden*, 7 Ohio App.3d 358, 363 (10th Dist.1982).

{¶ 25} Vansickle's proposed jury instructions stated,

> MISTAKE OF FACT AS TO AGE is a negating defense. A negating defense is one which tends to negate an essential element of the state's case. An example here might be a mistake of fact as to the age of the witness, where the defendant asserts that he mistakenly believed that the witness was 16 years old, the age of consent. Because this defense simply shows that an essential element of the offense is not present, the defendant does not have any burden of persuasion with regards to a negating defense.

{¶ 26} The trial court did not abuse its discretion in refusing to instruct the jury as to mistake of fact because the offense of unlawful sexual conduct with a minor is not a specific

---

2. Vansickle's argument that the evidence at trial included his friends' beliefs regarding G.M.'s age is inaccurate. As will be discussed in the third assignment of error, the trial court refused to permit Vansickle's friends to testify as witnesses and this did not amount to error.

intent crime. To find Vansickle engaged in an act that constituted unlawful sexual conduct with a minor, the jury was instructed to find that he either "knew" G.M. was under 16 or was "reckless" in this regard. Therefore, the jury could have found that Vansickle was "reckless" in determining that G.M. was over 16. "Mistake of fact" can only negate a specific intent crime. This court has previously explained that "'recklessness' involves an even lower mental state than 'knowingly'" and "does not involve a specific intent." *State v. Bryant*, 12th Dist. Warren No. CA2007-02-0241, 2008-Ohio-3078, ¶ 13, citing *State v. Davis*, 145 Ohio App.3d 296, 299 (12th Dist.2001). As reckless conduct was sufficient to prove that Vansickle acted with the necessary mental state, there was nothing about the reckless conduct that mistake of fact could have negated.

{¶ 27} Additionally, although the trial court did not give the instruction Vansickle requested, the instruction it gave incorporates the defense of "mistake of fact" into the definition of recklessly and knowingly. The court instructed the jury regarding the mental states involved in the offense.

> A person acts knowingly, when is aware of the existence of the facts and that his acts cause a certain result or be of a certain nature. Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence.
>
> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or to be of a certain nature. A person is reckless to circumstance when with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶ 28} The jury instructions clearly told the jury to consider the facts and circumstances in the case to determine whether Vansickle knew or was reckless that G.M. was under the age of 16. Therefore, this instruction necessarily included facts such as G.M.'s appearance, her drinking and smoking the night of the offense, and her failure to

attend school. Although the trial court did not highlight the particular defense or use the proposed instruction verbatim, the instruction given is substantially the same as the requested instruction. *See Rawson*, 7th Dist. Jefferson No. 05JE2, 2006-Ohio-496 at ¶ 15; *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, ¶ 37. Therefore, the court did not err in refusing to instruct the jury as to the defense of mistake of fact.

{¶ 29} Vansickle also argues that the trial court erred when it did not instruct the jury on the difference between negligence and recklessness. Vansickle requested the court include the definition of negligence and the difference between recklessness and negligence in the jury instruction. Specifically, Vansickle requested the following instructions,

> * * * RECKLESSLY IS NOT THE SAME AS NEGLIGENTLY.
>
> The Model Penal Code concept of a *reckless* state of mind requires that the actor <u>actually </u>foresee that a harm may occur. It requires an awareness and a *conscious disregard* of the *substantial* and *unjustifiable risk* that the material element exists or will occur from the actor's conduct.
> * * *
> NEGLIGENCE IS NOT THE SAME AS RECKLESSNESS. NEGLIGENCE *OJI-CV* 401.01 1 and 2. Negligence is the failure to exercise the degree of care which an ordinary careful and prudent person would exercise under the same or similar circumstances. R.C. 2901.22(D). A person act negligently when, because of a substantial lapse from due care, he fails to perceive of avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist. Due care is that amount of care which a reasonable prudent person is accustomed to use under the same or similar circumstances.
>
> <u>State v. Peck</u>, 172 Ohio App.3d 25, 2007-Ohio-2730—At ¶ 12-13—"A mere failure to perceive or avoid a risk, because of a lack of due care, does not constitute reckless conduct…Instead, one must recognize the risk of the conduct and proceed with a perverse disregard for that risk…In contrast to the actor who proceeds with knowledge of risk, the failure of a person to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature is negligence. R.C. 2901.22(D). Recklessness requires more than ordinary negligent

conduct. The difference between the terms "recklessly" and "negligently" is normally one of a kind, rather than of a degree. "Each actor creates a risk of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it." RECKLESS DISREGARD. *OJI-CV 431.01 10.*

2901.21 Criminal liability, culpability (A)(2). The Defendant must have the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense. If not, then the Defendant cannot be found guilty of this offense.

{¶ 30} The trial court refused to include any of these proposed jury instructions. Based on the facts and circumstances of this case, we find that Vansickle's proposed jury instructions were immaterial to the case. In order for the jury to determine whether Vansickle was guilty of unlawful sexual conduct with a minor, the jury only needed to determine whether Vansickle *knew* that G.M. was under 16 or was *reckless* in this regard. The court instructed the jury as to the meaning of these two mental states. The jury was not required to determine whether Vansickle was *negligent* or the difference between negligence and recklessness. Therefore, the court did not abuse its discretion in refusing to instruct the jury regarding negligence and the difference between negligence and recklessness. *See State v. Wood*, 2d Dist. Montgomery No. 2006 CA 1, 2007-Ohio-1027, ¶ 21-22; *Columbus v. Dials*, 10th Dist. Franklin No. 04AP-1099 2005-Ohio-6305, ¶ 60.

{¶ 31} Vansickle's first and second assignments of error are overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE TRIAL COURT ERRONEOUSLY REFUSED TO ALLOW HIM TO PUT ON WITNESSES, AND RESTRICTED HIS RIGHTS TO CROSS-EXAMINE WITNESSES AGAINST HIM, TO THE PREJUDICE OF DEFENDANT, AND THIS REFUSAL REPRESENTED BOTH AN ERROR OF LAW AND AN ABUSE OF DISCRETION, PREVENTING DEFENDANT FROM PUTTING

ON EXCULPATORY EVIDENCE AND PRESENTING HIS DEFENSE.

{¶ 34} Vansickle challenges the trial court's refusal to allow him to call Zach Fullen and Sam Roone and to re-call G.M. as witnesses in his case-in-chief. Vansickle argues that the court's prohibition in allowing him to call Fullen and Roone constituted an abuse of discretion and deprived him of due process and a fair trial by hampering his ability to present a complete defense. He also argues that the court violated his right to confront witnesses against him when it restricted his cross-examination of G.M.

**Zach Fullen and Sam Roone**

{¶ 35} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution grants an accused the right to summon to trial witnesses on his or her behalf. A defendant's right to present witnesses in his own defense is "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920 (1967). While a defendant's right to present witnesses in his own defense is a fundamental element of due process, an "accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653 (1988).

{¶ 36} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A trial court has broad discretion in the admission and exclusion of evidence. *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. A reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33.

{¶ 37} Vansickle requested the court to allow him to call Zach Fullen and Sam Roone as witnesses whose testimony would have established that they both believed and others

believed that G.M. was 18 years old. Specifically, Vansickle proffered that Zach Fullen would have testified that he knew G.M., had dated her, and she had told him and many other people that she was 18 years old. Fullen would have stated that he gave G.M. cigarettes and he observed G.M. drinking and smoking around her mother. Vansickle also proffered that Sam Roone would testify that G.M. told him she was 18 and he believed this because she was 5'8". He would testify that he had a romantic relationship with G.M.

{¶ 38} The trial court did not err in refusing to allow Fullen and Roone to testify. Vansickle was able to present a complete defense despite the exclusion of this testimony because he testified regarding his belief of G.M.'s age and cross-examined other witnesses regarding G.M.'s appearance and maturity. Additionally, the testimony of Fullen and Roone regarding *their* understanding of G.M.'s age or the *community's* understanding of her age was not probative as to the issue before the jury. The issue in this case was whether *Vansickle* knew G.M. was under the age of 16 or was reckless in this regard and therefore Fullen and Roone's beliefs as to G.M.'s age were irrelevant.

{¶ 39} Further, their testimony would be unfairly prejudicial as it would include the fact that they had dated G.M. This testimony would increase the risk that the jury might focus on G.M.'s dating and sexual history instead of focusing on whether Vansickle was *reckless* in his belief that she was over 16. Therefore, the trial court did not abuse its discretion in refusing the testimony of Fullen and Roone and Vansickle was not deprived of his right to a complete defense.

### G.M.

{¶ 40} Vansickle also argues that the court violated his right to confront witnesses against him when it did not allow him to call G.M. as if on cross-examination in the defense's case-in-chief. The Confrontation Clause of the Sixth Amendment to the United States Constitution gives the accused the right to be confronted with the witnesses against him.

*State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 83. Among the most vital rights guaranteed under this clause is the right of criminal defendants to cross-examine witnesses at trial. *State v. Bump*, 3d Dist. Logan No. 8-12-04, 2013-Ohio-1006, ¶ 89, citing *Cruz v. New York*, 481 U.S. 186, 189, 107 S.Ct. 1714 (1987). However, the Confrontation Clause guarantees only "'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (Emphasis sic.) *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, ¶ 64 (8th Dist.), quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292 (1985). "Accordingly, the court has 'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Warmus* at ¶ 64, quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431 (1986).

{¶ 41} Additionally, under Evid.R. 611(A), the trial court is empowered to control the presentation of evidence, including the "mode and order of interrogative witnesses * * * so as to (1) make the interrogation * * * effective for the ascertainment of the truth, * * * and (3) protect witnesses from harassment or undue embarrassment." The trial court should be mindful that cross-examination is allowable "on all relevant matters and matters affecting credibility." Evid.R. 611(B).

{¶ 42} "To establish a Confrontation Clause violation, the defendant must show that he was 'prohibited from engaging in otherwise appropriate cross-examination' and '[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination.'" *State v. Belcher*, 2d Dist. Montgomery No. 24968, 2013-Ohio-1234, ¶ 86, quoting *Van Arsdall* at 680. A reviewing court will not reverse the trial court's limitation or

prohibition on cross-examination unless the trial court abused its discretion in so ruling. *State v. Reed*, 10th Dist. Franklin No. 09AP-84, 2009-Ohio-6900, ¶ 7.

{¶ 43} At trial, the state conducted a direct-examination of G.M. and Vansickle's counsel briefly cross-examined G.M. After the state finished with its presentation of its evidence, Vansickle's counsel requested to call G.M. as if on cross-examination in its case-in-chief. The trial court refused to allow Vansickle to call G.M. again. After the court refused to allow Vansickle to re-call G.M., Vansickle proffered that G.M. would testify that she never told Vansickle her age and that Vansickle came back to G.M.'s home the morning of the incident to talk with G.M.'s mother.

{¶ 44} The trial court did not violate Vansickle's right to confront witnesses against him when it prohibited Vansickle from recalling G.M. Vansickle had the prior opportunity and availed himself of this opportunity to cross-examine G.M. Vansickle's failure to ask G.M. certain questions during her cross-examination did not result from a denial of opportunity of cross-examination and consequently did not violate his right to confront the witnesses against him. Instead, considering the sensitive nature of the case and the fact the witness had previously testified the day prior concerning the incident, the trial court was merely exercising its discretion in preventing the harassment or undue embarrassment of G.M. as well as reducing an interrogation that was repetitive.[3] *See Banks* at ¶ 52-53; *State v. Braxton*, 8th Dist. Cuyahoga No. 80663, 2002-Ohio-5072, ¶ 41-43.

{¶ 45} Vansickle's third assignment of error is overruled.

{¶ 46} Assignment of Error No. 4:

{¶ 47} DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE TRIAL COURT

---

3. While the denial to recall G.M. was not a violation of Vansickle's right to confront witnesses against him, the better practice of the trial court would have been to advise Vansickle at the time of G.M.'s testimony that she would not be able to be recalled.

ERRONEOUSLY DENIED HIS MOTION TO SUPPRESS HIS STATEMENT, TO THE PREJUDICE OF DEFENDANT AND IN VIOLATION OF HIS RIGHTS UNDER THE 4TH, 6TH, AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE I, SEC. 16 OF THE OHIO CONSTITUTION.

{¶ 48} Assignment of Error No. 5:

{¶ 49} DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED HIS MOTION TO SUPPRESS THE FRUITS OF THE WARRANTLESS SEARCH OF HIS CLOTHING, BODY AND DNA, TO THE PREJUDICE OF DEFENDANT.

{¶ 50} We will address Vansickle's fourth and fifth assignments of error together because they both concern the trial court's denial of Vansickle's motion to suppress evidence. Vansickle challenges the trial court's denial of his motion to suppress on three bases. First, Vansickle maintains that the statements he made to the police on May 19, 2012 should be suppressed because he was subject to a custodial interrogation and he did not receive *Miranda* warnings. Second, Vansickle argues that his September 5, 2012 statements were illegally derived from the May 19 statements and therefore should also be suppressed. Third, Vansickle challenges the admission of the clothing, body, and DNA evidence by arguing that this evidence was fruit of the poisonous tree from his May 19 conversation with the police. Vansickle also asserts that the clothing, body, and DNA evidence were collected in violation of the Ohio Attorney General's Collection Policy and Procedures, the Ohio Administrative Rules, and R.C. 2933.82(C).

{¶ 51} Our review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial

of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

### May 19, 2012 Statements

{¶ 52} Vansickle challenges the admission of the statements he made to police on May 19, 2012 because he was subject to a custodial interrogation and did not receive *Miranda* warnings. The state concedes that Vansickle was interrogated; at issue is whether Vansickle was in custody.

{¶ 53} "It is well-established that before law enforcement officials question a suspect in custody, the suspect must be advised of his *Miranda* rights and make a knowing and intelligent waiver of those rights before any statements obtained during the interrogation will be admissible as evidence." *State v. Hernandez-Martinez*, 12th Dist. Butler No. CA2011-04-068, 2012-Ohio-3754, ¶ 8, citing *State v. Treesh*, 90 Ohio St.3d 460, 470 (2001). However, "the duty to advise a suspect of constitutional rights pursuant to *Miranda* * * * arises only when questioning by law enforcement rises to the level of a custodial interrogation." *In re J.S.*, 12th Dist. Clermont No. CA2011-09-067, 2012-Ohio-3534, ¶ 11.

{¶ 54} *Miranda* defines custodial interrogation as any "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 10, citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966). "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he

was not free to leave.'" *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980).

{¶ 55} At the suppression hearing, Sergeant Ryan McFarland explained that he and another officer visited Vansickle's home on the morning of May 19, 2012 to investigate a complaint that Vansickle engaged in unlawful sexual conduct with a minor. McFarland arrived around 9:00 a.m., wore plain clothes, and drove an unmarked work vehicle. The other officer wore a uniform and drove a marked police cruiser. McFarland recorded the entire incident on a pocket recorder. McFarland waited outside Vansickle's home until Vansickle arrived at the door and told Vansickle and Arnold that they were "free to come down" to the Sheriff's Annex to discuss the matter. McFarland also told Vansickle and Arnold that they could ride in one of the police cruisers to the Annex. McFarland did not threaten Vansickle, did not tell him he was under arrest, did not handcuff him, and did not give him any *Miranda* warnings. On the recording, Vansickle did not hesitate or question whether he had the option to refuse the request to be interviewed or to travel to the Annex. Vansickle was transported to the Annex in McFarland's unmarked vehicle while Arnold was transported in the other police cruiser.

{¶ 56} At the Sheriff's Annex, Arnold was interviewed first while Vansickle was seated in an open area. After a brief interview with Arnold, McFarland requested that Vansickle come to the interview room. McFarland described the interview room's dimension as five feet by seven feet and stated that he shut the door but did not latch it so that the door would remain unlocked. McFarland informed Vansickle that he had the right to leave at any time and thereafter Vansickle chose to give a statement. On the recording, McFarland informs Vansickle that he is "not under arrest." After Vansickle's statement, a deputy transported Vansickle back to his home.

{¶ 57} Vansickle also testified that on May 19, 2012, around 8:30 in the morning, two

police officers approached his home. Vansickle was sleeping and awoke to find the officers in his living room. He stated that the officers told him that he had to go with them to the Sheriff's Annex to answer some questions regarding their investigation. Vansickle agreed because he felt like he could not refuse. During the interview, he was told that he was not under arrest. However, Vansickle did not feel free to leave because he did not have a cell phone in the interview room and his only transportation back to his home was through one of the sheriff deputies. Vansickle also stated that he had been drinking the night before and he had no experience with the police.

{¶ 58} The trial court did not err in determining that Vansickle was never in "custody" during the May 19, 2012 interview and that *Miranda* warnings were not required. Vansickle was told that he was not under arrest, was never handcuffed, voluntarily came to the Sheriff's Annex, and freely accepted McFarland's offer for transportation. At the Annex, Vansickle was seated in the large open area and only taken to the smaller interview room during his questioning. The door to the room remained unlocked and the entire interview lasted only 15 minutes. In fact, Sergeant McFarland's entire contact with Vansickle lasted only 44 minutes. Under the totality of the circumstances, a reasonable person would have believed that he was free to leave. Therefore, the trial court did not err in denying Vansickle's motion to suppress the statements he made to police on May 19, 2012.

### September 5, 2012 Statements

{¶ 59} Vansickle next asserts that the statements he made on September 5, 2012 should also be suppressed because they were derived from the May 19 statements, which were obtained without proper *Miranda* warnings. In support of his argument that the statements should be suppressed, Vansickle argues that this case falls under the "question-first" line of cases where a suspect is in custody, law enforcement questions that suspect, obtain a confession, provide *Miranda* warnings, and then seek to confirm the confession with

*Miranda* warnings provided. *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601 (2004).

{¶ 60} In *Seibert*, the United States Supreme Court held that law enforcement officers violate a suspect's Fifth Amendment rights when they interrogate a suspect while in custody, elicit a confession, inform the suspect of his *Miranda* rights, and then elicit the same confession. *Seibert* at syllabus. The Court reasoned that "[t]he object of question-first is to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." *Id.* at 611. Both sets of statements are inadmissible because "the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning." *Id.* at 612. *See State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 49 (physical evidence obtained as the direct result of statements made in custody without the benefit of *Miranda* warnings should be excluded).

{¶ 61} At the suppression hearing, Sergeant McFarland testified that he also visited Vansickle at his home on September 5, 2012. McFarland briefly discussed the laboratory results analyzing the DNA samples of Vansickle and G.M. with Vansickle at his front door and then left the premises. McFarland did not arrest Vansickle nor did he provide Vansickle with any *Miranda* warnings.

{¶ 62} The trial court did not err in refusing to suppress the statements Vansickle made on September 5, 2012. *Seibert* is obviously distinguishable from the case at bar because, unlike *Seibert*, in this case Vansickle was never in *custody* on May 19, 2012 and therefore the police were never required to inform him of his *Miranda* rights. Therefore, any statements Vansickle made on September 5, 2012 also cannot be subject to suppression as illegally derived from the May 19 statements when there was no violation of Vansickle's constitutional rights in the initial, voluntary interview. *See State v. Wilson*, 2d Dist. Montgomery No. 22665, 2009-Ohio-1279, ¶ 34-36; *State v. Estes*, 12th Dist. Preble No. CA2005-02-001, 2005-Ohio-5478, ¶ 8.

**Clothing, Body, and DNA Search**

**{¶ 63}** Lastly, Vansickle challenges the court's denial of his motion to suppress the DNA evidence that was obtained by the searches of the clothing that he wore on May 19, 2012 and his buccal swab. Specifically, Vansickle maintains that the evidence should be suppressed because it was the "fruit of the poisonous tree" from his May 19 statements that were obtained without *Miranda* warnings. Vansickle also argues that his consent to these searches was coerced. Lastly, he asserts that the evidence was obtained in violation of the Ohio Attorney General's Collection Policy and Procedures, the Ohio Administrative Rules, and R.C. 2933.82(C).

**{¶ 64}** As discussed previously, Vansickle was not in custody for purposes of *Miranda* on May 19, 2012 and law enforcement officials were not required to inform him of his *Miranda* rights. Therefore, as there was no *Miranda* violation, Vansickle's subsequent consent was not "fruit of the poisonous tree." Additionally, even if there had been a *Miranda* violation, "the *Miranda* warnings have no direct bearing on the issue of consent since consent is not interrogation nor a statement to police." *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 21, quoting *State v. Rice*, 5th Dist. Licking No. 02-CA-00096, 2003-Ohio-2860, ¶ 15. In other words, "consent to search is valid when voluntarily given, regardless of whether *Miranda* warnings have been given[.]" *Harsh* at ¶ 21, quoting *State v. James*, 5th Dist. Richland No. CA-2808, 1991 WL 115988, *2 (June 10, 1991).

**{¶ 65}** We now turn to whether Vansickle's consent was voluntary. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Dennis*, 12th Dist. Warren No. CA2012-01-004, 2012-Ohio-4877, ¶ 13, citing *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the few specifically established and well

- 20 -

delineated exceptions. *State v. Durham*, 12th Dist. Warren No. 2013-03-023, 2013-Ohio-4764, ¶ 31. One such exception occurs "when a person waives his Fourth Amendment protection by consenting to a warrantless search." *State v. Oberding*, 12th Dist. Warren No. CA2011-09-101, 2012-Ohio-3047, ¶ 13, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973).

{¶ 66} When the state attempts to justify a warrantless search on the basis of consent, "the state must demonstrate that the consent was freely and voluntarily given and not the result of coercion, express or implied." *State v. Taylor*, 77 Ohio App.3d 223, 226 (12th Dist.1991). The state has the burden to prove by clear and convincing evidence that the defendant's consent was freely and voluntarily given. *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 43. "Whether an individual voluntarily consented to a search is a question of fact, not a question of law," that is determined based on the totality of the circumstances. *State v. Sinha*, 12th Dist. Butler No. CA2012-11-237, 2013-Ohio-5203, ¶ 16. "Since this inquiry requires an assessment of the credibility of the evidence, the trier of fact is in the best position to make this determination, and its decision will not be reversed on appeal unless it is clearly erroneous." *Christopher* at ¶ 43.

{¶ 67} At the suppression hearing, Sergeant McFarland testified that on May 19, 2012 he interviewed Arnold at the Sheriff's Annex while Vansickle was seated in the "open area" of the Annex. After the interview, Arnold went into the open area and was advised in front of Vansickle that if he would not voluntarily give a DNA sample, the police would obtain a search warrant and get the DNA sample at a hospital. Arnold refused and thereafter Vansickle was taken into the interview room. During Vansickle's interview, McFarland asked him for permission to search the clothing he wore the night of the incident and to take a buccal swab from Vansickle's mouth for DNA testing. McFarland stated that he did not remember whether he told Vansickle he had the right to refuse to give a buccal swab but

stated that he did not threaten him with arrest if he failed to consent. Vansickle agreed and signed a "permission to search form" which indicated that he consented to the search of his clothing and buccal swab for DNA.

**{¶ 68}** At the hearing, Vansickle acknowledged that he signed the "permission to search form" but stated that he did not read the form and believed it only authorized the officers to search his clothes but not his buccal swab for DNA. Vansickle stated that he consented to the buccal swab because he was concerned that if he did not, the police would get a search warrant and forcibly require him to give a sample.

**{¶ 69}** The trial court's finding that Vansickle consented to search his clothing and buccal swab for DNA was supported by competent credible evidence. Vansickle was not in police custody and McFarland testified that he asked Vansickle to allow the police to search his clothing and buccal swab but did not threaten Vansickle if he failed to consent. Vansickle was never handcuffed, restrained, threatened, or given an inducement to provide his consent to the search. Additionally, Vansickle's testimony that he did not understand that the police would also search his buccal swab for DNA is refuted by the consent form that explicitly allowed the police to conduct this search. Therefore, we find that the trial court did not err in determining that Vansickle consented to the clothing and buccal swab search.

**{¶ 70}** Lastly, Vansickle argues that the evidence should be suppressed because it was obtained in violation of the Ohio Attorney General's Collection Policy and Procedures, the Ohio Administrative Rules, and R.C. 2933.82(C). Vansickle does not cite a specific provision that was violated but instead merely argues in one sentence that "evidence was adduced at the hearing" that the collection of Vansickle's DNA was did not comply with these rules. Upon a review of the record, there was no evidence that the collection of Vansickle's DNA was in violation of the Ohio Attorney General Collection Policy and Procedures, the Ohio Administrative Rules, and R.C. 2933.82(C). Therefore, the court did not err in refusing

to suppress Vansickle's clothing, body, and DNA evidence on this basis.

{¶ 71} Consequently, the trial court did not err in denying Vansickle's motion to suppress the statements he made on May 19, 2012 and September 5, 2012 as well as the results of the clothing, body, and DNA searches. Vansickle's fourth and fifth assignments of error are overruled.

{¶ 72} Assignment of Error No. 6:

{¶ 73} DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE JUDGE IMPROPERLY MISLED THE JURY AS TO AFFIRMATIVE DEFENSES AND ALLOWED IMPROPER ARGUMENT BY THE STATE, PREJUDICING THE JURY AND INTERVENING IN DEFENDANT'S PRESENTATION OF HIS CASE.

{¶ 74} Vansickle argues that the trial court violated his constitutional rights when it prevented his attorney from arguing a mistake of fact defense in closing argument. Vansickle also asserts that the court erred when it "berated" his attorney during her discussion of the burden of proof to the jury.

{¶ 75} The constitutional right to the assistance of counsel in a criminal prosecution has been interpreted so as to guarantee that the defense has an "opportunity to participate fully and fairly in the adversary fact-finding process." *State v. Parrot*, 12th Dist. No. Warren CA97-11-114, 1998 WL 526545, *2 (Aug. 24, 1998), citing *Herring v. New York*, 422 U.S. 853, 858, 95 S.Ct. 2550, 2553 (1975). Closing arguments provide the defense with an opportunity to summarize the evidence and serve as a "basic element of the adversary fact-finding process." *Parrot* at *2. Accordingly, defense counsel in a criminal prosecution cannot be denied the opportunity to make a closing argument even if the matter is a bench trial that appears "open and shut" at the close of the evidence. *Id.* Although defense counsel must be afforded an opportunity to make a closing argument and is afforded wide latitude in making such an argument, a trial judge retains discretion to limit the duration and scope of

closing arguments. *Id.*, citing *Pang v. Minch*, 53 Ohio St.3d 186, 194 (1990). Thus, a trial judge's limitation on closing arguments will not be reversed absent an abuse of discretion. *State v. Totarella*, 11th Dist. Lake No. 2002-L-147, 2004-Ohio-1175, ¶ 52.

{¶ 76} Vansickle requested that the trial court instruct the jury as to the defense of mistake of fact as to G.M.'s age. The trial court denied this instruction. Subsequently, during Vansickle's closing argument, the following exchange took place:

> [Defense]: * * * Let's talk about mistake of fact. Mistake of fact which mistake of age is a mistake of fact.
>
> [State]: Objection
>
> [Sidebar conference]
>
> [Judge]: Ladies and Gentlemen, the term mistake of fact is not an issue that you have to resolve so, counsel no further reference to the term mistake of fact. You'll be given jury instructions. It will have all of the definitions and terms that you need in this particular case.

{¶ 77} Later, defense counsel proffered that she would have argued a mistake of fact defense as to G.M.'s age during her closing argument. She maintained that this defense would negate the mental state required for unlawful sexual conduct with a minor.

{¶ 78} The trial court did not err in preventing Vansickle's attorney to argue a mistake of fact defense to the jury during closing argument and instructing the jury not to consider this issue. As discussed in the first assignment of error, the court did not err in refusing to instruct the jury as to the mistake of fact defense because it was redundant to the issues presented in the case. The jury was clearly instructed to consider the facts and circumstances as to whether Vansickle knew or was reckless that G.M. was under the age of 16. For the same reasons, the court did not err in sustaining the state's objection in regards to defense counsel comments regarding the mistake of fact defense. *See State v. Skerness*, 5th Dist. Coshocton No. 09-CA-28, 2011-Ohio-188, ¶ 74; *State v. Mahan*, 12th Dist. Butler

No. CA2002-10-262, 2003-Ohio-5430, ¶ 19.

{¶ 79} Vansickle also argues that during closing argument, the court "berated" his counsel about the defense's burden of proof and "telegraph[ed] his feeling about the case and the evidence to the jury." During closing arguments, Vansickle's attorney discussed the burden of proof in criminal cases. She stated:

> [Defense]:* * * But I'll tell you that beyond a reasonable doubt is the absolute highest burden of proof in our legal justice system. It applies only to criminal cases. And it serves an important purpose. It ensures that innocent people aren't convicted wrongfully. It's the exact burden of proof that you or I would want applied to us if we were accused of something. The burden of proof, in this case, beyond a reasonable doubt, is the exact same burden of proof that applies to death penalty cases.
>
> [State]: Objection your Honor.
>
> [Judge]: Sustained. The burden of proof I'll read the instructions to the jury. The burden of proof is the same on all criminal cases, whether it's a traffic ticket or a homicide. So this is argument Ladies and Gentlemen let's continue Ms. Gaba.

Further, Vansickle asserts that the trial court was also biased in favor of the state when it overruled his objections concerning the mischaracterization of the evidence in the state's closing argument.

{¶ 80} "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 48, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34. Judicial bias has been described as "'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as [opposed to] an open state of mind which will be governed by the law and the facts.'" *Dean* at ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus. The Supreme Court also recognized that "'judicial remarks during the course of a trial that are critical or disapproving

of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Dean* at ¶ 49*, quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147 (1994). Judicial remarks of this nature will support a challenge if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Dean* at ¶ 49*. Where a reviewing court finds that a trial was infected by judicial bias, the remedy is a new trial. *Id.* at ¶ 2.

{¶ 81} Upon a review of the record, we do not find that the trial court was biased toward the state nor did the court disparage defense counsel. Upon defense counsel's discussion of the burden of proof and comparison of the burden to capital punishment cases, the trial court merely clarified that the burden of proof is the same whether it is traffic tickets or a homicide. The court clearly instructed the jury regarding the burden of proof in the jury instructions. As stated above, it is within the discretion of the trial court to determine the appropriate bounds of closing arguments. Additionally, we do not find that the court was biased when it overruled Vansickle's attorney objections to the state's closing argument. The court properly found that the state was merely making an argument instead of misstating the evidence. The court harbored no bias toward defense counsel or Vansickle during the proceedings. The record reflects that the judge treated all parties and counsel with respect as manifested in the judge's comments and rulings during the trial. *See McKay v. Hardin Memorial Hosp.*, 3d Dist. Hardin No. 6-2000-08, 2001 WL 534988, *6 (May 18, 2001).

{¶ 82} Vansickle's sixth assignment of error is overruled.

{¶ 83} Assignment of Error No. 7:

{¶ 84} THE TRIAL COURT ERRED AS A MATTER OF LAW, TO THE PREJUDICE OF APPELLANT BY CONVICTING APPELLANT, BECAUSE THIS CONVICTION WAS BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTION.

{¶ 85} Lastly, Vansickle argues that his unlawful sexual conduct with a minor conviction was against the manifest weight of the evidence and not supported by sufficient evidence. "[W]hile a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct concepts, a finding that a conviction is supported by the weight of the evidence will be dispositive of the issue of sufficiency." *State v. Brauer*, 12th Dist. Warren No. CA2012-11-109, 2013-Ohio-3319, ¶ 12. With that in mind, we first examine whether Vansickle's conviction is supported by the manifest weight of the evidence.

{¶ 86} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 66. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction." *State v. Hall*, 12th Dist. Butler No. CA2012-01-014, 2013-Ohio-4427, ¶ 28.

{¶ 87} Vansickle was convicted of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A). That statute provides,

> No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

{¶ 88} "Sexual conduct" is defined in R.C. 2907.01(A) as: "vaginal intercourse

between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. * * *" Fellatio has been defined as a sexual act in which the mouth or lips come into contact with the penis. *State v. Speakman*, 12th Dist. Fayette No. CA2010-06-013, 2011-Ohio-3430, ¶ 12.

{¶ 89} Vansickle's conviction for unlawful sexual conduct with a minor was not against the manifest weight of the evidence. The evidence established that on May 19, 2012, G.M. was 15 years old, Vansickle was 22 years old, and G.M. was not the spouse of Vansickle. Additionally, several witnesses testified that G.M. and Vansickle engaged in sexual conduct. G.M. testified that she engaged in vaginal intercourse and fellatio with Vansickle. Two forensic scientists testified that they identified Vansickle's semen on samples taken from G.M.'s vagina, perianal area, and underwear. G.M.'s mother also stated that upon walking into G.M.'s bedroom, she saw G.M. performing conduct consistent with fellatio. Lastly, in both of Vansickle's statements made to police, he admitted that he received fellatio from G.M.

{¶ 90} Further, the greater inclination of evidence established that Vansickle knew that G.M. was under the age of 16 or was reckless in that regard. Vansickle testified that he did not know that G.M. was under 16 because she smokes cigarettes, he saw her drink alcohol, and her large stature. While G.M. might have behaved like an adult in some respects, Vansickle's May 19, 2012 statement to the police indicates that he was aware or at least had reckless disregard of G.M.'s age at the time of the sexual conduct. During the interview, he stated that he asked G.M. how old she was and refused to have sex with her because she was "way too young" and he was 22 years old. He also stated that "I'm 22 years old and I'm not messing with no 15 year old girl" and he told G.M. that "I can't do this, I'm 22 years old."

This statement along with the other evidence provided at trial such as the fact that G.M. lived with her parents and the jury's opportunity to observe G.M. testify and evaluate her appearance provided more than enough evidence to support Vansickle's conviction.

**{¶ 91}** In light of the evidence presented, the jury did not clearly lose its way in concluding that Vansickle was guilty of unlawful sexual conduct with a minor. Vansickle's conviction was not against the manifest weight of the evidence. Since we have determined that Vansickle's conviction for unlawful sexual conduct with a minor was not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the guilty verdict. Accordingly, Vansickle's seventh assignment of error is overruled.

**{¶ 92}** Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.