[Cite as *In re A.C.D.*, 2015-Ohio-232.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF:                           :

    A.C.D.                                 :            CASE NO.   CA2014-06-085

                                           :            O P I N I O N
                                                        1/26/2015
                                           :

                                           :


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 13-N000959


John D. Smith Co., L.P.A., John D. Smith, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for defendant-appellant

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee, state of Ohio


**PIPER, P.J.**

{¶ 1}  Defendant-appellant, A.C.D., appeals her adjudication of delinquency by the Warren County Court of Common Pleas, Juvenile Division.

{¶ 2}  During a summer night in 2013, T.D. had a party at his home while his parents were on vacation.  T.D.'s parents gave him instructions that he was not permitted to have anyone in the home beside four friends T.D.'s parents authorized.  T.D. invited the four friends, and one of the friends asked T.D. if he could bring a female guest.  T.D. told his

friend that he could invite the female guest. The female guest then called another person, S.K., and informed her of the party. At the time of the phone call, S.K. was with six other teenagers, one of whom was A.C.D. After the call, the teenagers left to go to T.D.'s house for the party.

{¶ 3} S.K., who knew T.D., believed that she could determine which house in the neighborhood was T.D.'s because she had been in his house before. However, S.K. was unsure which house was T.D.'s, and S.K. eventually led the other teenagers to the house next to T.D.'s. The group rang the doorbell to the home, and when no one answered, they went around to the back of the house. A.C.D. then opened the door to the back of the home, and she and S.K. entered the house. The other teenagers waited outside, as none knew whether or not they were at the correct house.

{¶ 4} Once inside the home, S.K. and A.C.D. took snacks from the kitchen's pantry and began to eat them. At that point, the homeowner, who had been awakened by the doorbell, heard talking downstairs and yelled for the intruders to leave. A.C.D. and S.K. dropped the snacks they were eating onto the floor and ran out the back door, where the others who had not entered the home were waiting for them. The homeowner came downstairs and observed that his back door was open, and that his fence gate in the back yard had been opened and left ajar.

{¶ 5} The homeowner called police, and Officer Randy Peagler responded to the call. Officer Peagler spoke with the homeowner, and conducted a short investigation. As part of his investigation, Officer Peagler spoke to teenagers, one of whom was T.D., who were located in a parked car down the street from the home A.C.D. entered. Officer Peagler then learned that A.C.D. and the others entered the wrong house, thinking it was the location of T.D.'s party.

{¶ 6} A.C.D. was later charged with burglary, a fourth-degree felony. A magistrate

held a trial, and adjudicated A.C.D. a delinquent child for having committed a crime which, if charged as an adult, would constitute burglary. A.C.D. objected to the magistrate's decision, and the juvenile court overruled the objections and adopted the magistrate's decision in full. A.C.D. now appeals the juvenile court's adoption of the magistrate's decision and her adjudication as a delinquent child for having committed burglary, raising the following assignment of error.

{¶ 7} THE TRIAL COURT ERRED IN OVERRULING A.D.'S OBJECTIONS TO THE MAGISTRATE'S DECISION AND FINDING THAT SHE COMMITTED BURGLARY.

{¶ 8} A.C.D. argues in her assignment of error that the juvenile court erred by adopting the magistrate's decision because she did not commit burglary.

{¶ 9} The purpose of a delinquency proceeding is to determine if the juvenile is delinquent, i.e., has violated a law that would be a crime if committed by an adult. R.C. 2152.02(F)(1). With the exception of a jury trial, juveniles are entitled to the same procedural safeguards afforded adults in criminal courts. *In re Gu'alt*, 387 U.S. 1, 87 S.Ct. 1428 (1967). One of those protections requires the state to prove the allegation of delinquency by proof beyond a reasonable doubt. Juv.R. 29(E)(4). Courts have generally relied on criminal principles and relevant case law when analyzing questions in delinquency proceedings. *In re J.D.S.*, 12th Dist. Clermont Nos. CA2013-06-046, CA2013-06-051, 2014-Ohio-77, ¶ 13.

{¶ 10} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

{¶ 11} A.C.D. was charged with burglary in violation of R.C. 2911.12(B), which provides "no person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." As such, the state was required to prove beyond a reasonable doubt that A.C.D. used force, stealth, or deception to trespass into the homeowner's residence.

{¶ 12} It is well-established in Ohio law that any force effecting entrance, however slight, constitutes the force required to satisfy the element. *State v. Lattire*, 12th Dist. Butler No. CA2004-01-005, 2004-Ohio-5648, ¶ 27. If "any force at all" is necessary to affect an entrance into a building whether open, partly open, or closed, such entrance constitutes force, including opening a closed but unlocked door. *State v. Hibbard*, 12th Dist. Butler Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, ¶ 30.

{¶ 13} During the trial, the state presented evidence that, if believed, established that A.C.D. opened the back door of the home in order to enter, thus constituting the requisite force. S.K. appeared as a witness at the trial, and when cross-examined, testified that A.C.D. opened the door once the teenagers went to the back of the house.[1] When viewed in a light most favorable to the prosecution, this evidence established that A.C.D. opened the unlocked door to gain entrance into the home, and therefore trespassed by force.

{¶ 14} A.C.D. also argues that the state failed to prove that she acted knowingly when

---

1. Despite A.C.D. not raising a specific manifest weight of the evidence challenge to her adjudication, she argues that the testimony of S.K. lacked credibility because S.K.'s testimony was contradicted by another witness. While another teenager, D.J., testified that S.K. opened the door, the juvenile court did not find the testimony credible for several reasons, including that D.J. did not have a good vantage point when he observed the door being opened. The evidence showed that it was dark at the time D.J. and the others stood at the back of the house, and D.J. testified that he did not go through the door, instead waiting back for the others to enter the house. As such, the juvenile court found the testimony of S.K. more credible than the testimony of D.J. in regard to who opened the door. However, and even if we were to find that S.K., not A.C.D., opened the door, principles of accomplice liability would apply, making A.C.D. liable for opening the door and walking through it. Regardless of which girl opened the door, neither had the authority to open the door or walk through.

she entered the homeowner's house. The burglary statute prohibits trespass by means of force, stealth, or deception. R.C. 2911.21(A)(1) defines one type of criminal trespass as knowingly entering or remaining on the land or premises of another. According to R.C. 2901.22(B), "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 15} A.C.D. argues that the state could not prove that she acted knowingly because she made a mistake by believing that the homeowner's house was actually T.D.'s home. Mistake of fact is a defense if it negates a mental state required to establish an element of a crime. *State v. Vansickle*, 12th Dist. Fayette No. CA2013-03-005, 2014-Ohio-1324, ¶ 24. Mistake of fact is widely recognized as a defense to specific intent crimes when the defendant has an honest purpose and the honest purpose provides an excuse for an act that would otherwise be deemed criminal. *Id.* As such, mistake of fact can, in an appropriate circumstance, negate a knowing mental state. *Id.*

{¶ 16} The juvenile court found, and we agree, that A.C.D. could not successfully assert mistake of fact as a defense, and that A.C.D.'s mistaken belief that the house was T.D.'s or that she had permission to walk in the back door that night was unreasonable. The evidence elicited at trial demonstrates that T.D. did not invite A.C.D. to his house, and that he never had permission to invite A.C.D. over that night. The testimony also demonstrated that A.C.D. had never been to T.D.'s house, and that she was merely relying on S.K.'s belief that they were entering T.D.'s house. However, the testimony showed that S.K. never exerted a firm belief that they were, in fact, entering T.D.'s home and instead, S.K. showed multiple signs that she was unsure as to whether it was really T.D.'s home they were entering.

{¶ 17} Specifically, T.D.'s father testified that he did not give T.D. permission to have a party, and instead, that T.D. only had permission to have a few designated friends at his

house. T.D. also testified that his parents gave him instructions not to have a party while they were on vacation, and that he was only permitted to have designated friends over to his house. T.D. also testified that while he knows who A.C.D. is because she attends his school, he was not friends with her at the time of the incident. T.D. testified that A.C.D. had never been to his house before, and that he did not invite her over to his house on the night of the incident.

{¶ 18} Another teenager, D.J., who was with A.C.D. on the night of the incident, testified that he accompanied A.C.D. and S.K., along with four other teenagers, to T.D.'s neighborhood, believing that they were going to T.D.'s house for a party. D.J. testified that he and the others went to the back of the house because "they weren't sure if it was [T.D.'s] house." D.J. further explained that "they were not sure so they were talking about [it] and it was between like that house and another house, which I guess that house was [T.D.'s] and they decided it was that house that was [T.D.'s]." D.J. also testified that once the teenagers got to the back of the house, they waited before entering because "they weren't sure when they were first walking whether it was [T.D.'s] or not." Even so, D.J. testified that S.K. and A.C.D. went into the house and then ran out when the homeowner yelled at them. When asked why he did not go into the house, and instead waited outside, D.J. answered "I was waiting to see if it was [T.D.'s] house or not."

{¶ 19} S.K. also testified, and stated that while she as aware of which street T.D. lived on, she was unsure as to the exact house.[2] S.K. also testified that she never spoke to T.D. that night to confirm which house was his, to confirm his address, or to receive a direct invitation to the party. S.K. testified that the teenagers rang the doorbell of the house they thought was T.D.'s, moved around to the back when they received no answer to the doorbell

---

2. The evidence at trial also indicated that the two houses in question were dissimilar, in that one had siding while the other had brick, they were not the same color, and that the houses had different features.

ring, and that she and A.C.D. gained entrance to the house by opening the closed back door.

{¶ 20} This testimony establishes that A.C.D. and T.D. were not even friends, that A.C.D. never had an invitation from T.D. to come to his house, and that she did not have any personal knowledge as to which house was T.D.'s. Even though the teenagers received no answer to the doorbell, the teenagers moved to the back of the house, and without taking any steps to confirm ownership of the home, opened the closed back door and entered the house. The entry was after S.K. debated multiple times whether the house was truly T.D.'s, and after the other teenagers elected to stay on the deck because of the continued uncertainty as to whose house they were entering. Therefore, A.C.D. entered the homeowner's house knowing that a possibility existed that the house was not T.D.'s. As such, A.C.D. was not successful in asserting the mistake of fact defense to negate her knowing mental state on the night of the incident.

{¶ 21} A.C.D. also argues that the juvenile court erred by excluding hearsay evidence as to why she and the other teenagers attempted to go to T.D.'s house on the night of the incident. "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 25. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002).

{¶ 22} According to Evid.R. 801(C), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible unless it falls within one of the permissible hearsay exceptions. Evid.R. 802.

{¶ 23} A.C.D. called S.K. as a witness, and began to ask her questions about receiving an invitation to go to T.D.'s house on the night of the incident for a party. During S.K.'s testimony, she began to relay a statement made by another teenager, K.M., regarding the party on the night of the incident and K.M.'s suggestion to enter T.D.'s house through the back door. The magistrate sustained the state's objection as hearsay, and very clearly indicated that the statements would not be admitted for the truth of the matter asserted therein. After reviewing the record, we agree.

{¶ 24} K.M.'s statements, as offered by A.C.D. through the testimony of S.K., were offered with the sole purpose of asserting the truth that the teenagers had permission to go to T.D.'s home that night for a party and had permission to enter T.D.'s home through the back door. As such, the statement was inadmissible hearsay and no exception exists for its admission because A.C.D. was not offering the statement for any other reason than to prove the truth of the matter asserted.

{¶ 25} For whatever reason, A.C.D. never called K.M. to testify to her statements. Even if she had, however, such testimony would not have established that A.C.D. had reason to rely upon K.M.'s statements. K.M. did not have authority to invite A.C.D. over to T.D.'s house, and she did not have authority to tell the teenagers to come through the back door of the home. Moreover, the state did not challenge the overall assertion that A.C.D. and the other teenagers went to the homeowner's house because they thought it was T.D.'s house. Therefore, the juvenile court had ample evidence that A.C.D. believed she was going to T.D.'s house that night, and K.M.'s testimony would have been cumulative to the other evidence about the party at T.D.'s house on the night of the incident. As such, and even if we were to assume that K.M.'s statement was offered for some other purpose than the truth of the matter asserted, such statement would not have proven the applicability of A.C.D.'s mistake of fact defense.

{¶ 26} A.C.D. also argues that the juvenile court erred by not considering the lesser included offense of criminal trespass. Even if an offense is a lesser-included offense, consideration of the lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. *State v. Garrett*, 12th Dist. Butler No. CA2002-05-111, 2003-Ohio-5000, ¶ 13.

{¶ 27} Given our discussion of A.C.D.'s prior argument regarding the sufficiency of evidence to support her adjudication, the juvenile court correctly found that A.C.D. committed burglary beyond a reasonable doubt. As such, the evidence did not support the possibility of an acquittal on the burglary charge or consideration of the lesser-included offense of criminal trespass.

{¶ 28} After reviewing the record and considering each of A.C.D.'s arguments, we overrule her single assignment of error.

{¶ 29} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.